UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| MCKEANZIE ALLEN, *as parent and next friend of* A.D., *a minor*, | )<br>)<br>) |
| Plaintiff, | ) Case No. 6:24-cv-00009-GFVT-HAI<br>)<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) **& ORDER** |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the parties' Joint Motion to Approve their Settlement Agreement. [R. 32.] McKeanzie Allen and Bobby Dykes, as the parents and guardians of A.D., have reached a settlement with the United States for personal injuries on behalf of A.D. *Id.* The parties now jointly move the Court to approve their settlement agreement. *Id.* The parties seek to accomplish several tasks with their motion: (1) approval of the settlement, (2) authorization for A.D.'s guardians to enter such a settlement on her behalf and execute necessary documents and releases to consummate the settlement, (3) approval of A.D's Self-Settled Special Needs Trust ("Trust"), (4) approval of payment of attorney's fees and costs from the corpus of the Trust, and (5) waiver of annual accounting and distribution authorizations related to the Trust. For the reasons set forth herein, the Court with **GRANT** the parties' joint motion.

**I**

McKeanzie Allen initiated this action on behalf of her daughter, A.D., for damages arising from injuries that occurred during the birth of A.D. [R. 1.] Ms. Allen brought claims for medical malpractice against the United States under the Federal Tort Claims Act for alleged negligent care provided by Kimberly Wurth-Frazier, M.D., a federal employee. *Id.* at 1. This

case was first filed in Pulaski Circuit Court on May 8, 2023, but it was dismissed and re-filed in this Court on January 29, 2024. [R. 34 at 1.] In essence, Plaintiff alleges that Dr. Frazier failed to use proper delivery technique during the birth of A.D., which resulted in permanent brachial plexus injuries to A.D. *Id.* at 2.

The case proceeded in this Court for several months, with the parties conducting extensive discovery, including retaining several dueling experts. *Id.* at 3. Then, on June 20, 2025, the parties reached a resolution of the case at a settlement conference with Magistrate Judge Hanly A. Ingram. *Id.* The parties indicated to the Court that they had reached a settlement, but notified the Court that Plaintiff intended to invest some of the settlement funds in a Self-Settled Special Needs Trust that will be funded in part by an annuity, which required several additional steps. [R. 25; R. 26.] To establish the Trust, the proposed settlement agreement was reviewed and approved by the Probate Division of the Pulaski County District Court, and that court found the Trust was in the best interests of A.D. [R. 34 at 6.] Also, as required by K.R.S. § 387.125, A.D.'s parents, McKeanzie Allen and Bobby Dykes, petitioned the Pulaski Circuit Court to be appointed as A.D.'s Guardians, which that court granted. [R. 32-3.]

Additionally, investing the funds in an annuity required the parties to (1) agree on a broker on the DOJ's approved broker list, (2) get a quote from that broker for an annuity in whatever amount the parties agree will be invested in said annuity, and (3) memorialize both the terms of the broader settlement agreement as well as the annuity piece of the agreement in one writing. [R. 24.] The parties completed all of these steps and then retained outside counsel to draft the Trust document. [R. 28.] Following the completion of the Trust document, the parties jointly moved this Court to approve the settlement. [R. 32.] The Court ordered additional

briefing on the requested attorneys' fees and case expenses, which the parties promptly submitted. [R. 33; R.34.] As such, this matter is now ripe for review.

## II

### A

Before reaching the merits of the Motion, the Court must determine whether a hearing is required. There does not seem to be a standardized hearing requirement under federal law, and some district courts use the state law of the district in which they sit to determine whether or not a hearing is required. *See generally Adkins v. TFI Family Services, Inc.*, 2017 WL 4338269 (D. Kan. 2017). Kentucky imposes statutory requirements on settlement agreements involving minors. KRS § 387.278, which details the procedures for minor settlements, does not require a hearing to take place before the Court approves the settlement, nor is the Court aware of any case law requiring as much. Among other things, KRS § 387.278 requires appointment of a guardian if the settlement amount is over $25,000. Because A.D. is a minor and her settlement is over $25,000, a petition to appoint A.D.'s parents as Guardians of her estate was filed in Pulaski District Court on November 20, 2025. [R. 32-3.] The court granted the petition and appointed McKeanzie Allen and Bobby Dykes as Guardians. *Id.* Because the Court does not find a hearing is necessary or required, the Court will proceed with analyzing the adequacy of the settlement terms according to Sixth Circuit precedent.

### B

In cases involving legal claims brought by minors in a federal forum, this Court has a duty under Sixth Circuit case law to "ma[k]e an independent determination" that any proposed settlement is "in the minor's best interest." *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997).

3

Specifically,

> when a settlement involves a minor child, a stipulation of dismissal under Rule 41(a)(1)(A)(ii), which is otherwise self-executing and does not require judicial approval in the form of an order, does not operate to dismiss a case unless and until the district court 'make[s] an independent determination that the settlement [is] in the minor's best interest.' Authority for denying the self-executing nature of a Rule 41 stipulation is based in a federal district court's inherent authority to 'safeguard interests of persons entitled to the court's special protection,' such as minor children.

*Kiel by Kiel v. Barton*, No. 09-CV-15053, 2011 WL 13206189, at *1 (E.D. Mich. Jan. 31, 2011) (quoting in part *Green*, 111 F.3d at 1301) (citations omitted).

*Green* does not specify which factors should be considered in determining what is "in the minor's best interest." However, many district courts have applied the Sixth Circuit's class action fairness factors in this context. In doing so, courts consider (1) the "risk of fraud or collusion"; (2) the "complexity, expense and likely duration of the litigation"; (3) the "amount of discovery engaged in by the parties"; (4) the "likelihood of success on the merits"; (5) the "opinions of class counsel and class representatives"; (6) the "reaction of absent class members"; and (7) the "public interest." *International Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("UAW factors"); *see generally Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019).

Federal Rule of Civil Procedure 23(e)(2), which addresses class actions, was amended to include additional factors, including whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief

4

provided is adequate; and (4) the proposal treats class members equitably relative to each other. Following the amendment, some courts have continued to apply only the UAW factors, while other courts have applied both the UAW factors and Rule 23 factors. *Compare In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2022 WL 9990022, at *2 (N.D. Ohio Oct. 17, 2022), *and Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2022 WL 16554651, at *3 (S.D. Ohio Oct. 31, 2022), *with Ware v. CKF Enterprises, Inc.*, No. 5:19-cv-183, 2020 WL 5087766, at *5 (E.D. Ky. Aug. 26, 2020), *and Davis v. Omnicare, Inc.*, No. 5:18-cv-142, 2021 WL 4188053, at *5 (E.D. Ky. Sept. 14, 2021). In the only case the Sixth Circuit has addressed following the amendment, the Sixth Circuit applied only the UAW factors, but it was reviewing a settlement that predated the amendment, so the Sixth Circuit did not need to consider the amended rule. *See Does 1–2*, 925 F.3d at 894. Due to the lack of guidance, the Court will consider both sets of factors in determining whether the settlement is in the best interest of the minor.

  In the instant case, the parties have agreed to settle and release A.D.'s claims for $775,000.00. [R. 32 at 2.] There is no evidence before the Court of fraud, collusion, or any other kind of bad faith that might cause the undersigned concern that the minor is not getting a fair settlement. The parties engaged in significant discovery, including extensive medical and expert proof, and reached a settlement through mediation with Unites States Magistrate Judge Hanly Ingram. [R. 22; R. 25.]

  Based on the parties' representations, the settlement consists of a fair value of what A.D. would have been entitled to had the instant lawsuit been resolved in her favor. Further, approving the settlement at this juncture would avoid further delay and litigation costs while the parties brought this case to its final conclusion. While there is no evidence before the Court that

the legal issues involved in this case would have been unduly complex or nuanced, the fact remains that litigation is time-consuming and expensive and avoiding that expense is in the minor's best interest. For these reasons, the undersigned finds that the settlement and settlement amounts are in minor's best interest. Thus, the Court finds approval of the settlement amount is appropriate and approves disbursement of the settlement proceeds.

Additionally, the Court finds that a special needs trust is in A.D.'s best interest because it will protect her eligibility for Medicaid and Medicaid waiver services, and other means-tested benefits to which she is entitled or may be entitled to in the future. [R. 32 at 2-4.] Under federal law, funds held in a trust for disabled individuals which supplement those individuals' means-tested government benefits will not cause the disabled beneficiary to lose eligibility for such benefits if certain provisions are included in the trust. 42 U.S.C. 1396p(d)(4). Thus, the creation of a Self-Settled Special Needs Trust is in A.D.'s best interest because it balances management of her current assets with protecting her eligibility for means-tested benefits. Accordingly, the Court will approve the creation of the parties' proposed Trust and permit the addition of funds to the Trust, once created. [R. 32-4.]

Lastly, the Court must "also determine whether the attorney's fees are reasonable." *Wood v. Van Over*, No. 3:18-CV-380-TRM-DCP, 2019 WL 7882568, at *3 (E.D. Tenn. Nov. 26, 2019); *see also Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988) ("Independent investigation by the court as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest is required.") (citing *Dixon v. United States*, 197 F.Supp. 798, 802 (W.D.S.C. 1961)). In doing so, the Court "must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Dean*, 860 F.2d at 673.

6

Here, this case was brought under the Federal Tort Claims Act which caps attorney fees at twenty five percent of any judgment awarded.  28 U.S.C.§ 2678.  The parties request $193,750.00 of the trust corpus be paid as attorneys' fees and $78,324.74 of the trust corpus to be paid as case expenses.  [R. 32 at 2.]  The $193,750.00 requested as attorneys' fees equates to twenty five percent of the total settlement amount, $775,000.00, which is the statutory maximum allowed under the FTCA.  28 U.S.C. § 2678.  The parties originally submitted a signed contract between the Plaintiff and Plaintiff's counsel, where the parties agreed to a contingency fee of twenty-five percent.  [R. 32-2.]

However, the Court found additional information was necessary and ordered "additional briefing addressing the fee reasonableness factors. . .and supporting documentation for the case expenses requested." [R. 33.]  The Plaintiff submitted a supplemental motion specifically addressing each of the fee reasonableness factors in detail.  [R. 34 at 6-9.]  The Plaintiff emphasized the complexity, risk, and cost associated with medical malpractice cases in general, and specifically birth injury cases such as this one.  *Id.*  The Plaintiff also submitted an affidavit signed by counsel which detailed how the case expenses were calculated.  [R. 34-1.]  In light of the foregoing, the Court finds that Plaintiff's request for attorney fees is reasonable.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Joint Motion to Approve Settlement **[R. 32]** and the Supplemental Motion to Approve Settlement **[R. 34]** are **GRANTED** and the settlements proposed for A.D. are **APPROVED**;

7

2. McKeanzie Allen and Bobby Dykes, as A.D.'s Guardians, are **AUTHORIZED** to sign any documents necessary to consummate the settlement, specifically including the stipulation for compromise settlement and incorporated trust **[R. 32-1]** attached to the Motion on behalf of A.D.;

3. McKeanzie Allen and Bobby Dykes, as A.D.'s Guardians, **SHALL** coordinate the transfer of A.D.'s personal injury settlement proceeds to the Self-Settled Special Needs Trust as soon as practicable;

4. Payment of the attorney fees in the amount of $193,750.00 is **APPROVED**;

5. Payment of case expenses in the amount of $78,382.01 is **APPROVED**;

6. The annual accounting or distribution authorizations are **WAIVED**;

7. The Court has reviewed the structured settlement agreement language and hereby **ORDERS**:

    a. That using the amount of $335,000.00, Defendant United States of America, **SHALL** purchase an annuity from New York Life Insurance Company; and

    b. That New York Life Insurance Company shall make the following periodic payments to the A.D. Self-Settled Special Needs Trust:

        i. $1,000.00 payable monthly, for two years, beginning on May 10, 2037, with the last payment on April 10, 2039;

        ii. $2,500.00 payable monthly, for four years, beginning of May 10, 2039, with the last payment on April 10, 2039; and

        iii. $3,717.12 payable monthly, for twenty-eight years, beginning on May 10, 2043, with the last payment on April 10, 2071.

8. The parties **SHALL** file a stipulation of dismissal within **thirty (30) days** from the entry of this Order.

This the 3rd day March, 2026.

Gregory F. Van Tatenhove
United States District Judge